ROBERT Y. McCLURE v. WILLIAM H. McCLURE Jr., TRUSTEE

5-4336                                    420 S. W. 2d 98

Opinion delivered November 6, 1967

*Laws & Schulze* and *Lester & Shults,* for appellant.

*Williams & Garner,* for appellee.

CONLEY BYRD, Justice. Appellant Robert Y. McClure brings this appeal to determine the authority of appellee William H. McClure, Jr., as trustee of the "W. H. Mc-Clure Trust," to place the cotton allotment assigned to lands belonging to the trust in the Cropland Adjustment Program, Pub. L. 89-321, Title VI, § 602, Nov. 3, 1965, 79 Stat. 1206, 7 U.S.C.A. § 1838. For reversal of the trial court's decree upholding the authority of the trustee to place said lands in the Cropland Adjustment

Program for a period of ten years, appellant relies on the following points:

I. Placing the trust lands under the Cropland Adjustment Program was in violation of the trustee's mandatory obligation to "obtain a tenant or lessee for all farm lands owned by the trust."

II. The Trustee had no authority to enter into the Cropland Adjustment Agreements for a period of ten years.

The trust principal consists of some 3,100 acres of land located in the Dardanelle District of Yell County. Appellee is made trustee. He is also a life beneficiary thereof along with appellant, their brother, David B. McClure, and their sister, Janet M. Chivers. The remainder beneficiaries are the natural grandchildren of the settlor, who take upon the death of the last surviving life beneficiary. The authority and duties of the trustee are described in the trust agreement as follows:

"The Trustee is charged with the custody, management and protection of all assets of the Trust estate. The Trustee is expressly authorized to lease any real estate owned by the Trust to himself individually or to any other beneficiary of the Trust, provided that any such lease shall not exceed a term of ten years and the rental shall not be less than the prevailing rental value of comparable lands in the surrounding area. *The Trustee shall obtain a tenant or lessee for all farm lands owned by the Trust,* and shall not without the unanimous consent of Grantor's living children, use Trust funds to finance the cultivation of or any farming operation upon the lands owned by the Trust.

"The Trustee is authorized, with the consent of Grantor's living children, to purchase additional real or personal property to be added to and become a part of the principal of the Trust, pledging and using the net income of the Trust to pay the purchase price for such

additional assets. The trustee shall not have the authority to sell, exchange, convey, mortgage or hypothecate any real or personal property of the Trust without the unanimous consent of Grantor's living children.

"The Trustee is authorized to receive and receipt for all rents, property or interests received by the Trust estate; to satisfy liens upon real or personal property of the Trust; to institute or defend legal proceedings for the recovery or protection of assets of the Trust estate; . . . and otherwise, to exercise all duties, rights and authority reasonably incident to the holding of legal title to the Trust assets and discharge of his Trust responsibilities.

"The Trustee shall not be required to give bond and shall not be required to render any accounting to, or be subject to the supervision of, any Court. The Trustee shall not be personally liable for any losses incurred by the Trust for any reason other than fraud.

"No person dealing with the Trustee shall be bound to inquire into the power or authority of the Trustee to do or perform any acts as Trustee of this Trust. Nor shall any person paying money or other valuable consideration to the Trustee be required or bound to see to the application, reinvestment or disbursement of such money or other consideration paid or delivered to the Trustee.

"The Trustee shall keep proper records and books of account of his administration of the trust, which books and records shall be subject to inspection at all reasonable times by the income beneficiaries of the Trust. . . ." (Emphasis supplied.)

The Cropland Adjustment Agreement, after identifying the fields placed in the program and the payment schedule, provides:

"Each undersigned producer agrees to participate in the Cropland Adjustment Program and to comply

with the terms and conditions herein and the provisions of the regulations governing the program which are hereby made a part of the agreement. Each such producer agrees that in accordance with the provisions of the regulations: (1) The designated acreage shown above will be diverted for the agreement period from the production of crops to approved practices and uses as shown in column 23. (2) No crop will be harvested from the designated acreage and such acreage will not be grazed during the agreement period except as provided in the regulations. (3) The acreage permitted to be devoted to the crops diverted from production as shown above shall be zero except as provided in the regulations. (4) The feed grain base and acreage allotments on this farm with respect to which no diversion is shown above and the feed grain base and acreage allotments on any other farm in which the producer has an interest will not be exceeded. (5) The conserving base for the farm will be maintained for the agreement period. Each producer understands that he is jointly and severally responsible with the other producers on the farm for compliance with this agreement and for any refund or forfeiture of payments determined according to the regulations for failure to comply fully with the agreement. All producers entitled to share in the annual adjustment payments under this agreement are shown herein and the division of the annual adjustment payments is fair and equitable. Each undersigned producer applies for the total number of annual adjustment payments due him under this agreement."

The proof shows that appellee in his individual capacity has been leasing a portion of the lands on a crop rental basis, and that M. Y. Chivers, Jr., husband of Janet M. Chivers, as a partner in a partnership d/b/a Cotton Town Farm, has been leasing the remainder of the lands.

We are assuming that counsel for appellant are correct in their statement that the lands can be withdrawn from the Cropland Adjustment Agreement on request of appellee.

There was ample evidence from which the trial court could have found that the Cropland Adjustment Agreement was temporarily more beneficial to the trust from the standpoint of income than a crop rental of the lands, but for purposes of our decision herein, we do not concern ourselves with the issue.

I

Appellant's argument that the trustee was without authority to enter into the Agreement is based on two premises: (1) that the trust agreement is mandatory in requiring that "the Trustee shall obtain a tenant or lessee for all farm lands owned by the trust," and (2) that the placing of lands under a Cropland Adjustment Agreement does not amount to obtaining a "tenant or lessee." From these two basic premises appellant concludes that the lands cannot be placed in the Cropland Adjustment Program without his consent.

The purpose of the Cropland Adjustment Program is to hold acreage out of production as a supplement to the Commodity Adjustment programs, 1965 U. S. Code Congressional and Administrative News, 89th Cong. P. 3963. A review of the act, 7 U.S.C.A. § 1838, shows that the landowner, in agreeing to the program, is required to do little more than permit the lands to remain idle with some sort of conserving cover crop for the period of the agreement. The act, 7 U.S.C.A. § 1838(m), recognizes that lands under lease to a tenant can be placed in the program and contains directions to the Secretary of Agriculture to set up safeguards to protect the tenant's rights to share in the payments.

We hold that appellant's contention is not sustained by the trust agreement. While the Cropland Adjustment Agreement is not, strictly speaking, a lease, it accomplishes the purposes of a lease—i. e., it furnishes the landowner an income for a period of years without any appreciable financial risk or necessity for management. The Agreement certainly cannot be classified as a sale, exchange, conveyance, mortgage or hypothecation for

which the trust requires the unanimous consent of the settlor's living children.

Furthermore, when the section on which appellant relies as mandatorily requiring a "tenant or lessee" is read in its entirety, it appears that the dominant purpose of the trust settlor was that the lands, while producing an income, should not be subjected to the risks and hazards of a farming operation. Reading the section in this light, we are unwilling to hold that the trustee was not authorized to enter into the Cropland Adjustment Program.

It should be noted that the trustee, in his individual capacity, and M. Y. Chivers, as tenant of the lands prior to the Cropland Adjustment Agreements, were, under the Cropland Adjustment Program, entitled to a portion of the payments. It appears, however, that they have elected to turn the total payments over to the trust.

## II

Nor can we agree with appellant that the trustee exceeded his authority by placing the lands in the program for ten years. There was ample testimony to show that men of prudence, discretion and intelligence in the management of their own affairs were signing up their cotton allotments in the Cropland Adjustment Program for a period of ten years. We think this sufficiently meets the test for a trustee's conduct as authorized by Ark. Stat. Ann. § 58-302 (Supp. 1965).

Affirmed.

HARRIS, C. J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. I cannot agree with the disposition of this case. The extent of the duties and powers of a trustee depends upon the terms of the trust, and we have held that a court should restrict a trustee's powers to those conferred in the trust instrument; further, that mandatory language

must be given full effect. *Patterson* v. *Polk,* 229 Ark. 272, 317 S. W. 2d 286. In that case, we said:

"The distinction between *mandatory* and *precatory* words in wills and trust instruments could make a treatise in itself. In wills and trust instruments, directions are held to be mandatory when such words direct, command, or require something to be done; and directions are held to be *precatory* when such words merely express a hope or wish, and leave it to the trustee or the occurrence of some fortuitous circumstance as to whether the desires will be accomplished."

The language of the trust instrument here at issue is quoted in the majority opinion. To me, "The trustee *shall* [my emphasis] obtain a tenant or lessee for all farmlands owned by the trust" is absolutely mandatory, and I cannot view it in any other way.

To my way of thinking, the only valid reason that the trustee could have (under the trust) for placing the lands under the Cropland Adjustment Program would be the failure to find a tenant. This certainly was not true in the present case. The record reflects that a Mr. Harold Snyder made a bid to lease the bottom land of the trust property for $50,000.00 per year for a ten-year period.[1] Of course, I do not think that the matter of whether the trust would earn more money by leasing the land, or by placing it in the government program, is pertinent, and the majority say that they do not concern themselves with that issue.

This trust was created by Mr. W. H. McClure, Sr., and he had a perfect right to make the requirement under discussion—whether it be wise or unwise. The majority admit that the Cropland Adjustment Agreement is not a lease, and certainly the government agency is not a tenant. In *Chastain* v. *Hall,* 182 Ark. 920, 33 S. W.

---

[1] The payment from the government agency to the trust for the year, 1966, amounted to a little over $24,000.00.

2d 45, this court defined a tenant as, "One who holds possession of real estate by any kind of right; one who has the occupancy or temporary possession of land or tenements, the title of which is in another." Here, the government agency (Agricultural Stabilization and Conservation Service) does not occupy, nor have temporary possession, of the trust lands. Possession remains with appellee, who is obligated to plant some type of cover crop. It simply appears to me that the trial court, and now, this court, have rewritten the contested portion of the Declaration of Trust.

I also agree with appellant that the trustee exceeded his authority by placing the lands in the program for ten years. The lands could have been placed there for a period of five years, which is much more in line with leasing customs in Yell County. The majority say:

"There was ample evidence from which the trial court could have found that the Cropland Adjustment Agreement was *temporarily* [my emphasis] more beneficial to the trust from the standpoint of income than a crop rental of the lands, but for purposes of our decision herein, we do not concern ourselves with the issue."

I cannot agree that ten years constitutes a temporary period.

For the reasons herein stated, I would reverse the trial court.